ORIGINAL

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------o

James S. Hawkins-El III and Valerie Gaston

Plaintiffs,

-v-

AIG FEDERAL SAVINGS BANK,

Defendant.
--------------------------------------------------------------o




IRIZARRY, J

COMPLAINT

RECEIVED

MAR 2 7 2007

PRO SE OFFICE

1. At all times hereinafter the People: plaintiffs, James S. Hawkins-El III and Valerie Gaston

were and still are domiciled in The United States of America, namely the State of New York,

legally residing at 159 Bch 97th St. Rockaway Bch, New York.

2. Defendant, AIG FEDERAL SAVINGS BANK, is a corporation located at One Alicio Plaza,

600 king street Wilmington, DE 19801-000.

3. The jurisdiction of this court is invoked pursuant to Diversity of Citizenship, 28 U.S.C. 1332.

4. This complaint was originally filed with this court 7/06/05 and dismissed by Order Adopting

Report and Recommendation pursuant to Fed. R. Civ. P. 12(b)(6), Doc. # 26. (Attached)

5. UNITED STATES COURT OF APPEALS affirmed the lower courts decision. (Attached)

6. AIG Federal Savings Bank never challenged or opposed plaintiffs' claim of fraudulent

inducement, and the Courts having not indicated or alluded to any preclusion to re-file said

complaint, plaintiffs do so here now again complain and do also here now meet all pleading

requirements afore stipulated by the Courts.

7. On 7/2/04, the plaintiffs went, as scheduled by Larry Ganca, Sr. Loan Officer/BLS

FUNDING, to the plaintiffs' mortgage loan closing (refinance) at the offices of BLS FUNDING

125 Jericho Turnpike, New York. Present for the defendant was agent Michael Lowitt/closing

attorney, and also present was Larry Ganca/Sr. Loan officer, who were both present throughout the closing.

8. The plaintiffs had begun the process of signing the necessary documents to close the loan, and were abruptly stopped by the defendant's agent Lowitt, who took the few (4-5) documents the plaintiffs had indorsed to be examined by defendant's agent Corey M. Gindi, who then came into the conference room, and stated that the contract could not be entered into with the remedy ("All Rights Reserved") we had placed above our signatures.

9. The Plaintiffs respectfully requested from agent Gindi, a Lawful as to why the plaintiffs were being prohibited from that which the Law allows. Agent Gindi replied because "The Bank" would not accept it.

10. Plaintiffs asked agent Gindi, how he knew "The Bank" would not accept the loan if plaintiffs remedied our signatures with the words "All Rights Reserved." Agent Gindi said, because he was "The Bank" ("I am the Bank".)

11. Plaintiffs stated to agent Gindi that plaintiffs were merely exercising a right protected by Law to reserve our rights upon entering the loan contract. To which agent Gindi responded, "What rights?, You don't have any rights."

12. Agent Gindi stated emphatically, that the loan would be signed his way or no way, "It will be signed my way or no way."

13. Plaintiffs, after going back and forth for some time in a very heated and high tensioned argument with agent Gindi, finally acquiesced under the extreme pressure and duress applied by agent Gindi, who threatened to pull out of the loan closing if the plaintiffs insisted on placing the remedy "All Rights Reserved" above our signatures upon entering the loan contract.

2

14. Agent Lowitt sat in silent acceptance of all that went on during the entire loan closing, giving credence to what was being stated by agent Gindi.

15. Subsequently on 7/4/04 plaintiffs sent notification of agent Gindi's actions at closing to David Brown, Pres. of BLS FUNDING/Premium Capitol Funding. Copies were also sent to agent Gindi and Sr. Loan Officer Ganca. Both sent no reply.

16. 8/3/04, Audra Hornig, Gen. Counsel of BLS FUNDING/Premium Capitol Funding, sent a letter in response to plaintiffs' 7/4/04 letter, denying any wrong doing on the part of Premium Capitol Funding.(Letter Attached)

17. 8/20/04, a letter, which reason stated: "BAD FAITH, FALSE STATEMENTS, FRAUD, etc," was sent by plaintiffs to Robert W. Pierce, Pres./CEO, AIG Federal Savings Bank, questioning the validity of agent's statements made at the 7/2/04 loan closing. Such as, "he was 'The Bank'" and "the signing would be his way or no way."

18. The letter asked very explicitly "Did Mr. Gindi speak for Wilmington Finance/AIG Federal Savings Bank when he made the aforementioned statements?"

19. The letter also asked "Is there a legislative Bill, Rule, or Regulation etc in force and effect in the State of NY or DE that Wilmington Finance/AIG Federal Savings Bank has to comply with as it relates to the restriction of the Reservation of Rights by a Citizen in the State of NY or DE upon signing a loan contract." Their answer was positively negative to said inquiries. Copies were also sent to agent Gindi and Wilmington Finance Legal Dept., neither sent a reply.(Letter Attached)

20. 12/10/04, Carl Lutz, VP Mortgage Services, Wilmington Finance, a division of AIG Federal Savings Bank, sent a reply to plaintiffs 8/20/04 letter to Robert W. Pierce, Pres./CEO, AIG Federal Saving Bank.

3

21. The letter states very clearly and unambiguously, "In your letter you inquire whether Mr. Gindi was 'the Bank' and whether Mr. Gindi spoke for the 'Bank' when providing instructions at your loan closing. Mr. Gindi is not an employee of AIG Federal Savings Bank ('AIG FSB')" i.e. Mr. Gindi is not "The Bank."

22. "Mr. Gindi is required to close loans pursuant to instructions provided by AIG FSB. i.e. not "his way or no way."

23. "The deviation in the signature line as defined in your letter, which was defined as follows 'Mr. Gindi stated that 'The Bank' would not accept mortgage loan no. A4070096 if it was signed and all rights were reserved by the applicants, Valerie Gaston and myself.' is not contemplated in the closing instructions." i.e. there was no instruction to prohibit plaintiffs from reserving our rights upon signing the loan contract.

24. "Closing agents are not permitted to deviate from the closing instructions." i.e. AIG Federal Savings Bank did not authorize agent to close the loan "his way or no way."

25. "AIG FSB respects each party's right to enter into an agreement on terms that are acceptable to said party. The terms entered into were agreeable to AIG FSB. We infer from the fact that you closed your mortgage loan, that you were agreeable to the terms as well." (Letter Attached)

26. 12/19/04, plaintiffs sent a letter in reply to Carl Lutz's 12/10/04 letter, in which we plainly state, "I find the terms of the loan agreement Unacceptable, Illegal, and Unlawful. No instruction requirement, although lacking contemplation of that which is afforded and guaranteed by Law, has the power or authority to excuse or exempt an attorney from his oaths and obligations to uphold the Constitution of the state in which he practices. That which is Lawful remains lawful contemplated or not." Carl Lutz sent no reply. A copy was also sent to Robert W. Pierce, who also sent no reply. (Letter attached)

27. 1/21/05, a letter was sent by plaintiffs to Audra Hornig, General Counsel and David Brown, Pres. of BLS FUNDING/Premium Capitol Funding, agent Gindi and agent Lowitt, informing them of the contents of the 12/10/04 letter from Carl Lutz that was sent to plaintiffs. Which states in part, "When we signed loan # A4070096, albeit under Protest and Duress, it was with a firm reliance on the Truth and Authenticity of what were False Statements and Misrepresentation made by Corey M. Gindi, whereby we entered the contract with a true belief that Mr. Gindi was in fact who he said he was. Mr. Gindi's False Statement of who he was, was made when I squarely questioned him how he knew that loan # A4070096 would be denied if the People reserved our rights upon signing, and Mr. Gindi replied, he knew because he was 'the Bank' (I am the Bank') None sent a reply.(Letter Attached)

28. 2/ 21/05, plaintiffs sent a Final Notice to Robert W. Pierce, Pres/CEO, AIG Federal Savings Bank, informing him, in part, that "A burden of absolute necessity to make inquiry into wrongful/unlawful acts committed by an agent is squarely placed upon the principal for whom that represents, when Notice of such wrongful/unlawful acts is received by said principal. AIG Federal Reserve Bank closing agent Corey M. Gindi did, July 2, 2004 at loan # A4070096 closing, act in Bad Faith, commit Fraud, make False Statements and Misrepresentations, Infringe upon the Rights of the People and did so in an Abusive and Malicious manner, causing loan # A4070096 to be signed under False Pretense. What action on the part of AIG FSB will be undertaken to bring this matter back to the table to be Fully and Completely Remedied?" Mr. Pierce sent no reply. Copies were also sent to Carl Lutz, VP Mortgage Services, David Brown, Pres. BLS FUNDING/Premium Capitol Funding, agent Corey M. Gindi and agent Michael Lowitt. None sent a reply. (Letter Attached)

29. Defendant's agent, Corey M. Gindi, did knowingly, willfully, and deceitfully act in Bad Faith, making False Statements and Misrepresentations at the 7/2/04 mortgage loan closing to fraudulently induce plaintiffs to sign the loan documents under False Pretense, and did so in a most abusive, offending, and virulent manner.

30. Defendant's agent, Corey M. Gindi, did infringe upon and damaged plaintiff's absolute right to be told the Truth when we asked the very critically material question, how he knew "the Bank" would not accept the loan documents if we reserved our rights by placing a remedy above our signature and he lied, falsely stating that he knew, because he was "the Bank," and that it would be signed his way or no way. Plaintiffs' absolutely positively would not have signed the loan documents had agent Gindi not made those False statements.

31. The terms of any contract agreement are as valid as the manner in which that agreement is made. "Good Faith" or "Fair Dealing" is key and quintessential to every contract in its execution or performance. No true meeting of the minds can be made between two parties, if one of the parties makes false statements and misrepresentations to induce the other party to enter the agreement under false pretense, which is exactly the case here.

32. The damages plaintiffs suffered were not only to our legal/lawful rights in consummating the contract, which was executed in "Bad Faith," but also to our very Being/Persons pursuant to the outrageous, hostile, uncouth, and totally reprehensible behavior of defendant's agent Corey M. Gindi, who told plaintiffs we had no rights, stating "What rights?, you don't have any rights."

33. Defendant's agent Gindi knew that his statements, "I am the Bank" and "It will be signed my way or no way," were false, which "The Bank's" 12/10/04 letter clearly verifies the falsity of, stating, "Mr. Gindi is not an employee of AIG Federal Savings Bank" i.e. he is not "the Bank"

6

and "Mr. Gindi is required to close loans pursuant to instructions provided by AIG FSB i.e. not his way or no way.

34. Plaintiffs relied on the truth of agent Gindi's false statements, who was called into the loan closing procedures as the controlling and superior authority by agent Lowitt, who himself is a learned professional and specializes in loan closings, but did not know why we could not remedy our signatures. So when agent Lowitt reached the limits of his authority he yielded to a higher one. Agent Gindi though, when asked how he knew the loan would not be accepted if remedied, chose to falsely state that he was that next higher authority, i.e. "The Bank," which he knew he most certainly was not.

35. Defendant's agent Gindi knew his statements were false, because he knew he was not even an employee of "the Bank," nor did he decide and set "the Bank's" policy or rules pursuant to closing loans.

36. Plaintiffs relied on the truth of the false statements, aforesaid, made by agent Gindi and signed the loan contract directly pursuant to those false statements. Plaintiff's justifiably relied on the truth of those false statements made by Corey M. Gindi, an Attorney at Law, who has a professional code of ethics, duties and responsibility, who is bound by oaths and obligations to up hold the Law, and who possesses specialized knowledge and expertise in the field of mortgage loans, which gave him all the credibility he needed to be justifiably relied upon to truthfully answer the critically material question that had to be answered before we would closed our loan agreement. The question of course was how he knew "the Bank" would not accept the loan documents if plaintiffs remedied our signatures, and his answer was, he knew because he was "the Bank" ("I am the Bank), which of course was totally false. Agent Gindi's actions have thoroughly, completely, and forever voided the mortgage loan contract here in question.

7

37. Agent Gindi also compounds his wrong doing and further violates the law by falsely swearing in an affidavit(Attached) that the deviation in the signature line at question was somehow prohibited by a specific instruction directive contained in the closing instructions, which is totally contradictory to what AIG Federal Saving Bank unequivocally states in their 12/10/04 letter, "The deviation in the signature line as defined in your letter is not contemplated in the closing instructions." i.e. there was no prohibiting instruction contained in the closing instructions pursuant to the deviation (reservation of rights).

38. By reason of the facts and circumstances stated afore, the defendant has knowingly infringed upon and damaged the legal/lawful rights of the plaintiffs, and done so in a most abusive, reprehensible, and virulent manner, causing the plaintiffs immense pain and suffering.

39. By reason of the facts and circumstances stated above, plaintiffs rights have been damaged by the defendant in the sum of $5,000,000.00 lawful money, additionally the plaintiffs Being/Persons have been damaged in the sum of $1,000,000.00 lawful money.

40. Wherefore, plaintiffs demand in the sum of $6,000,000.00 in lawful money, cost and disbursements, together with any other relief the court finds to be just and proper.

"All Rights Reserved"

The People

James X. Hawkins-El III,   Valerie Gaston

159 Bch 97th St.
Rockaway Bch, NY 11693
718-945-6516

8

List of attached documents:

8/3/04 letter-Audra Hornig

8/20/04 letter-plaintiffs

12/10/04 letter-defendant

12/19/04 letter-plaintiffs

1/21/05 letter-plaintiffs

2/12/05 letter-plaintiffs

4/7/05 Affidavit-Corey M. Gindi, Michael Lowitt

7/2/04 closing instructions-defendant

District Court Decision

Court of Appeals Decision

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO SUMMARY ORDERS FILED AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY THIS COURT'S LOCAL RULE 0.23 AND FEDERAL RULE OF APPELLATE PROCEDURE 32.1. IN A BRIEF OR OTHER PAPER IN WHICH A LITIGANT CITES A SUMMARY ORDER, IN EACH PARAGRAPH IN WHICH A CITATION APPEARS, AT LEAST ONE CITATION MUST EITHER BE TO THE FEDERAL APPENDIX OR BE ACCOMPANIED BY THE NOTATION: "(SUMMARY ORDER)." UNLESS THE SUMMARY ORDER IS AVAILABLE IN AN ELECTRONIC DATABASE WHICH IS PUBLICLY ACCESSIBLE WITHOUT PAYMENT OF FEE (SUCH AS THE DATABASE AVAILABLE AT HTTP://WWW.CA2.USCOURTS.GOV/), THE PARTY CITING THE SUMMARY ORDER MUST FILE AND SERVE A COPY OF THAT SUMMARY ORDER TOGETHER WITH THE PAPER IN WHICH THE SUMMARY ORDER IS CITED. IF NO COPY IS SERVED BY REASON OF THE AVAILABILITY OF THE ORDER ON SUCH A DATABASE, THE CITATION MUST INCLUDE REFERENCE TO THAT DATABASE AND THE DOCKET NUMBER OF THE CASE IN WHICH THE ORDER WAS ENTERED.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, at 500 Pearl Street, in the City of New York, on the 27th day of February, two thousand and seven.

Present:

HON. JOHN M. WALKER, Jr.
HON. ROBERT D. SACK
HON. RICHARD C. WESLEY
*Circuit Judges.*

James S. Hawkins-El, Valerie Gaston,

*Plaintiffs-Appellants,*

v.

No. 06-3534-cv

AIG Federal Savings Bank,

*Defendant-Appellee.*

Appearing for Plaintiffs-Appellants:  JAMES S. HAWKINS-EL, *pro se*, Rockaway Beach, New York.

Appearing for Defendant-Appellee:  JOY HARMON SPERLING, Pitney Hardin LLP, Morristown, New Jersey.

1    UPON DUE CONSIDERATION, it is hereby ORDERED, ADJUDGED, AND
2    DECREED that the judgment of the district court is AFFIRMED.
3
4        Plaintiffs-appellants appeal from the July 17, 2006 judgment of the United States District
5    Court for the Eastern District of New York (Irizarry, J.) granting defendant-appellee's Federal
6    Rule of Civil Procedure 12(b)(6) motion to dismiss their complaint for failure to state a claim on
7    which relief can be granted. In that complaint, they asserted that agents of the appellee had made
8    fraudulent statements inducing them to refinance their mortgage. We assume the parties'
9    familiarity with the underlying facts of the case, its procedural history, and the arguments on
10   appeal.
11
12       This Court reviews *de novo* a district court's dismissal of a complaint pursuant to Rule
13   12(b)(6), with all inferences drawn in favor of the plaintiff. *Posr v. Court Officer Shield No. 207*,
14   180 F.3d 409, 413 (2d Cir. 1999). "However inartfully pleaded, a *pro se* complaint may not be
15   dismissed under Rule 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no set
16   of facts in support of his claim which would entitle him to relief." *Id.* (citation, internal
17   quotation marks, and brackets omitted).
18
19       As a preliminary matter, the appellants unequivocally aver that their complaint does not
20   assert any cause of action under the Constitution's Contract Clause or the UCC. Thus, we do not
21   construe their complaint to contain any such claims.
22
23       Although the appellants also assert that the district court erred in considering a claim of
24   fraud under New York common law, they nonetheless indicate that the basis for their suit is their
25   allegation that the appellee's "agent," Corey M. Gindi, fraudulently induced them to enter into
26   the loan agreement at issue here -- a common law claim. Because there are no other causes of
27   action that this Court could construe the appellants' complaint to contain, we therefore examine
28   only the issue of whether the appellants' complaint states a claim of fraudulent inducement.
29
30       "The District Court, exercising its diversity jurisdiction, was obliged to apply the
31   substantive law of the state to which the forum state, New York, would have turned had the suit
32   been filed in state court." *Factors Etc., Inc. v. Pro Arts, Inc.*, 652 F.2d 278, 280 (2d Cir. 1981)
33   (citations omitted). Because the appellees are New York citizens and the transaction at issue
34   took place in the appellee's New York office, this district court properly applied New York law.
35   *See Clarkson Co. Ltd. v. Shaheen*, 660 F.2d 506, 512 n.4 (2d Cir. 1981).
36
37       "In order to state a claim for fraud under federal or New York state common law a
38   plaintiff must allege that the defendant made a material false representation, that the defendant
39   knew of the falsity (scienter), that the defendant acted with intent to defraud, that the plaintiff
40   reasonably relied on the false representation, and damages." *Marcus v. AT&T Corp.*, 138 F.3d
41   46, 63 (2d Cir. 1998) (citations omitted). In the present case, the appellants' complaint did not
42   allege that Gindi's representations to them at the time of the hearing were either false or material
43   to the loan agreement, or that they were statements upon which they had reasonably relied.

2

1
2          In their objections to the magistrate judge's report and recommendation before the district
3  court, the appellants asserted for the first time that Gindi's statement, "I am the Bank," had led
4  them to believe that he was the highest authority at AIG, and that that statement was false
5  because he was not, in fact, the highest authority. It was plainly not reasonable for the appellants
6  to believe that the primary authoritative figure at AIG was reviewing the documents related to
7  their home loan. But even if it were reasonable for them to have such a belief, Gindi's statement
8  was not material to the transaction. The appellants assert that they had a *right* to have AIG's
9  highest authority figure inform them as to whether they could endorse the loan documents with
10 the mark "All rights reserved." They have not demonstrated the existence of any such right.
11 Neither have the appellants shown that Gindi's statement was a false representation. His
12 statement – "I am the Bank" – could reasonably be interpreted to mean that he represented the
13 bank, rather than to mean that he was its highest authority.
14
15         The appellants also contend that Gindi falsely indicated that they could not endorse the
16 loan documents with the mark "All rights reserved." The documents submitted by the appellants,
17 however, indicate that Gindi's assertion was correct. As the district court noted, the AIG closing
18 instructions submitted by the appellants stated that "[e]ach borrower must sign all documents
19 EXACTLY AS THEIR NAME IS TYPED ON THE DOCUMENT." This instruction indicates
20 that the appellants were (unsurprisingly) not permitted by the rules of the bank to sign the loan
21 documents in the manner in which they requested. The letter that the appellants received from
22 Carl Lutz, AIG's Vice President of Mortgage Services, also confirmed that Gindi's position was
23 correct.
24
25         Finally, the appellants failed to allege that they had been injured. To the extent that they
26 contended that they were offended by Gindi's demeanor at the closing, such injury, standing
27 alone, does not constitute legally cognizable damages under these circumstances. *See Marcus,*
28 138 F.3d at 64.
29
30
31         For the foregoing reasons, we hereby AFFIRM the district court's judgment.
32
33
34                                                      FOR THE COURT:
35                                                      Thomas Asreen, Acting Clerk
36
37
38
39                                              By: Lucille Carr

3

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
JAMES S. HAWKINS-EL III and          :
VALERIE GATSON, pro se,              :
                                     :
                    Plaintiffs,      :          **ORDER ADOPTING**
                                     :     **REPORT & RECOMMENDATION**
                                     :          **05 CV 3222 (DLI)(LB)**
          -against-                  :
                                     :
AIG SAVINGS BANK,                    :
                                     :
                    Defendant.       :
----------------------------------------------------------X
**DORA L. IRIZARRY, U.S. District Judge**

          Pro se plaintiffs, James S. Hawkins-El III and Valerie Gaston, bring this diversity action

alleging that defendant, AIG Federal Savings Bank ("AIG"), "duped" them into signing loan

documents "under pretense." Defendant moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). By

order dated August 3, 2005, this court referred the motion to U.S. Magistrate Judge Lois Bloom who

issued a Report and Recommendation ("R&R"), dated March 21, 2006, recommending dismissal

of this action.[1] Plaintiffs objected. For the reasons set forth below, Judge Bloom's R&R is adopted

and defendant's motion to dismiss is granted in its entirety.

                                  **Background**

          This case stems from a mortgage refinancing agreement between the parties. The dispute

centers around plaintiffs' attempt to add "All Rights Reserved" ("Mark") to their endorsement on

the promissory note. Defendant's closing agent refused to accept such a Mark on the closing

documents and threatened to pull out of the closing. Plaintiffs, "after going back and forth for some

time in a very heated and high tensioned argument with the defendant's agent, Corey M. Gindi,

_____

[1] Familiarity with J. Bloom's R&R is assumed.

finally acquiesced." (Compl. ¶ 10.) Plaintiffs argue that defendant's agent was without authority

to prevent them from endorsing the promissory note with the Mark and were misled by defendant's

agent about their ability to do so. Claiming that their unspecified rights have been "infringed upon,"

plaintiffs seek six million dollars in damages. (Compl. ¶¶ 4-5, 10, 25-26.)

Liberally construing plaintiffs' complaint, Judge Bloom inferred three causes of action: (1)

a New York State claim for fraudulent inducement; (2) a claim for a violation of the Contracts

Clause of the U.S. Constitution; and (3) a violation of Uniform Commercial Code § 1-207. After

careful consideration of each of these claims, Judge Bloom concluded that none of them was viable

and recommended dismissal of the action.

Rather than specifically object to the R&R, plaintiffs state:

Plaintiffs ABSOLUTELY did not bring the action for the above stated reasons, and
if the Lawful Court has some how 'construed' the Plaintiffs to have been bringing
the action for the above stated reasons, they are totally wrong and have misconstrued
the intent of the Plaintiffs in this matter.
Plaintiffs clearly state that the complaint was brought because, Plaintiffs were duped
by AIG FSB agents into signing the loan under pretense.

(Pl.'s Notice of Objection at 1.)

Even liberally construing this statement as a specific objection to M.J. Bloom's R & R in

light of plaintiffs' pro se status, a *de novo* review warrants adoption of the R & R.[2]

## Discussion

As a preliminary matter, M.J. Bloom questioned the court's subject matter jurisdiction but

elected to address the merits of plaintiffs' claims nonetheless.

---

[2] "It is well settled that pro se litigants generally are entitled to a liberal construction of their
pleadings, which should be read 'to raise the strongest arguments that they suggest.'" *Green v. United
States*, 260 F.3d 78, 83 (2d Cir. 2001) (*quoting Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir.1996)).

2

In their complaint, plaintiffs allege that they reside in New York and that AIG is a Delaware corporation. They also state that the alleged injury occurred in New York and claim that the amount in controversy is six million dollars. (Compl. ¶¶ 1–4, 26.) On this basis, plaintiffs invoke the district court's diversity jurisdiction under 28 U.S.C. § 1332. Defendant does not challenge plaintiffs' contention that AIG is a Delaware corporation. Thus, the court assumes that complete diversity exists. However, defendant does challenge plaintiffs' claim that the amount in controversy exceeds seventy-five thousand dollars. (Deft.'s Mem. of Law at 15.) Because federal diversity jurisdiction is not "lost by post-filing events that change or disturb the state of affairs on which diversity was properly laid at the outset," *Wolde-Meskel v. Vocational Instruction Project Cmty. Servs.*, 166 F.3d 59, 62 (2d Cir. 1999), the court accepts plaintiffs' contention that the amount in controversy requirement of 28 U.S.C. § 1332 is satisfied.

*Fraudulent Inducement*

After delineating the elements of a claim for fraudulent inducement, M.J. Bloom found that plaintiffs' claim failed for two reasons: (1) the claim failed to satisfy the heightened pleading requirements of Fed. R. Civ. P. 9(b)(1); and (2) under New York law, the false representation allegedly made by defendant's closing agent was not material. (R&R at 7–8.)

Pursuant to Fed. R. Civ. P. 9(b), a complaint that includes a claim of fraud, must specify, *inter alia*, "why the statements were fraudulent." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994). Plaintiffs here insist that defendant's agent misrepresented that plaintiffs were prohibited from adding the Mark to their endorsement on the loan agreement. As proof of this alleged misrepresentation, plaintiffs point to the AIG closing instructions which were not attached

3

to the complaint.[3]   These instructions state, in relevant part, that "[e]ach borrower must sign all

documents EXACTLY AS THEIR NAME IS TYPED ON THE DOCUMENT." (Pls.' Notice of

Objection, Ex. A.)   A plain reading of this instruction supports the defendant's contention that the

Mark plaintiffs sought to add was superfluous and violative of this closing instruction.   Thus,

plaintiffs have failed to show that defendant's agent made a fraudulent statement and thereby have

failed to satisfy Fed. R. Civ. P. 9(b)'s heightened pleading requirements.   Accordingly, M.J.

Bloom's recommendation to dismiss this claim is adopted and the court need proceed no further with

respect to this claim.

*Contracts Clause*

Based on plaintiffs' reference to the U.S. Constitution in their complaint, specifically that

plaintiffs believed that defendant's agent was "Impairing the Obligation of Contract," M.J. Bloom

inferred that plaintiffs were asserting a claim that defendant violated their constitutional right to

freely contract.   (Compl. ¶¶ 7–8.)

As M.J. Bloom correctly notes, the U.S. Constitution regulates "the conduct of the State, not

private companies such as AIG." (R&R at 9.)   "[S]tate action requires both an alleged constitutional

deprivation 'caused by the exercise of some right or privilege created by the State or by a rule of

conduct imposed by the State or by a person for whom the State is responsible,' and that 'the party

charged with the deprivation must be a person who may fairly be said to be a state actor.'" *Flagg*

*v. Yonkers Sav. and Loan Ass'n, FA*, 396 F.3d 178, 186 (2d Cir. 2005) (*quoting Am. Mfrs. Mut. Ins.*

---

[3] "[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint, the court may nevertheless take the document into consideration in deciding the defendant's motion to dismiss, without converting the proceeding to one for summary judgment." *Holowecki v. Federal Exp. Corp.*, 440 F.3d 558, 565 (2d Cir. 2006) (*citing Int'l Audiotext Network, Inc. V. Am. Tel. & Tel. Co.* 62 F.3d 69, 72 (2d Cir. 1995)).

4

*Co. v. Sullivan*, 526 U.S. 40, 50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999)). The court adopts M.J. Bloom's recommendation that this claim be dismissed because plaintiffs "cannot establish that the defendant's conduct constitutes state action." (R&R at 9.)

*New York Uniform Commercial Code § 1-207 ("U.C.C. § 1-207")*

Based upon plaintiffs citation to U.C.C. § 1-207 in paragraph 7 of the complaint, M.J. Bloom inferred a cause of action under this provision. That section provides:

> A party who with explicit reservation of rights performs or promises performance or
> assents to performance in a manner demanded or offered by the other party does not
> thereby prejudice the rights reserved. Such words as "without prejudice", "under
> protest" or the like are sufficient.

U.C.C. 1-207.

Article 9 of the U.C.C. applies to secured transactions such as the one at issue here. However, U.C.C. § 9-109(d)(11) explicitly exempts, in relevant part, the "creation or transfer of an interest in or lien on real property." Because the U.C.C. is inapplicable to transactions secured by real property, M.J. Bloom's recommendation that this claim be dismissed is hereby adopted.

### Conclusion

Magistrate Judge Bloom's R&R is adopted in its entirety. Defendant's motion to dismiss plaintiffs' complaint pursuant to Fed. R. Civ. P. 12(b)(6) is granted. In light of the instant decision, plaintiffs' motion for summary judgment, filed March 21, 2006, is denied as moot.[4] The Clerk of the Court is directed to close the file maintained in this matter and to enter judgment for the

---

[4] Plaintiffs' motion for summary judgment essentially restates plaintiffs' objections to M.J. Bloom's R & R. *See* Docket at 21.

5

defendant.

DATED:      Brooklyn, New York
            July 13, 2006

                                     /s/
                              DORA L. IRIZARRY
                              United States District Judge

6

1-2

James S. Hawkins-El III
159 Bch 97th St
Rockaway Bch, NY 11693

Robert W. Pierce, President/CEO
AIG Federal Savings Bank
One Alico Plaza, 600 King St.
Wilmington, DE 19801-0000

2/12/05

Re: BAD FAITH, FALSE STATEMENTS, MISREPRESENTATIONS, INFRINGEMENT OF
    RIGHTS, MALFEASANCE ETC. Pursuant to Loan # A4070096.
    Actor: AIG Federal Saving Bank closing agent Corey M. Gindi/attorney at Law.

Dear Mr. Pierce,

        I AM James S. Hawkins-El III. This letter shall serve as the Third and FINAL NOTICE
to AIG FSB pursuant to the unlawful acts committed by Corey M. Gindi, July 2, 2004 at Loan #
A4070096 closing, while acting as an agent for and under the closing instructions of AIG Federal
Savings Bank.

A burden of absolute necessity to make inquiry into wrongful/unlawful acts committed by an
agent is squarely placed upon the principal for whom that agent represents when, NOTICE of
such wrongful/unlawful acts is received by said principal.

AIG Federal Savings Bank closing agent, Corey M. Gindi did, July 2, 2004 at Loan # A4070096
closing, act in Bad Faith, commit Fraud, make False Statements and Misrepresentations, Infringe
upon the Rights of the People and did so in an Abusive and Malicious manner, causing Loan #
A4070096 to be signed under False Pretense.

Closing attorney Mickey Lowitt, who in fact summoned Mr. Gindi, was present throughout said
closing and sat a silent witness to the unlawful closing procedures.

Larry Ganca/Sr loan Officer was also present throughout said closing.

2-2

"Law, in its generic sense, is a body of rules of action or conduct prescribed by controlling authority, and having binding legal force."

Mr. Corey M. Gindi has violated that body of rules of action and conduct, and in so doing Voided Loan # A4070096.

What action on the part of AJG FSB will be undertaken to bring this matter back to the table to be Fully and Completely Remedied?

Your prompt professional response to this Legal/Lawful matter is quite necessary and will be respected.

JUS.

"WITH EXPLICIT RESERVATION OF ALL RIGHTS,
WAIVER OF NONE, VESTED AND RETAINED.?

The People:

James S. Hawkins-El III,
Free National Citizen of the United States of America.

Cs:   Carl lutz, Vice Pres. Mortgage Service
      David Brown, Pres. Premium Capital Funding/BLS FUNDING
      Corey M. Gindi, attorney at Law, closing agent
      Mickey Lowitt, attorney at Law, closing agent

1-2


James S. Hawkins-El III
159 Bch 97th St.
Rockaway Bch, NY 11693


Audra Hornig
General Cousel
Premium Capital Funding
125 Jericho Turnpike NY 11753

1/21/05


Re: BAD FAITH, FRAUD, MALFEASANCE, FALSE STATEMENTS,
    MISREPRESENTATIONS, INFRINGEMENT OF RIGHTS ETC:
    Corey M. Gindi/Attorney at Law, BLS FUNDING.


Dear Mrs. Hornig,

        I AM James S. Hawkins-El III. This letter is in response to your Aug. 4, 2004 letter in
which you state that: "you had every right under the law at that time not to sign the documents
and walk away from the loan." Yes, just as we have every right at this time to vigorously seek
remedy and redress for the egregious violation of The People's rights under that same Law.

When we signed loan # A4070096, albeit under Protest and Duress, it was with a firm reliance
on the Truth and Authenticity of what were False Statements and Misrepresentations made by
Corey M. Gindi, whereby we entered the contract with a true belief that Mr. Gindi was in fact
who he said he was. Mr. Gindi's False Statement of who he was, was made when I squarely
questioned him of how he knew that loan # A4070096 would be denied if the People reserved
our rights upon signing, and Mr. Gindi replied, he knew because he was "the Bank" ("I am the
Bank").

I have written to the President/CEO of AIG Federal Savings Bank pursuant to Mr. Gindi's False
Statement ("I am the Bank"). AIG FSB states that: "Mr. Gindi is not an employee of AIG Federal
Savings Bank ("AIG FSB") rather; he is an independent closing attorney."

Mr. Gindi Falsely stated that the loan would be signed his way or no way ("it will be signed my
way or no way.").

2-2

AIG FSB states: "As a closing agent, Mr. Gindi is required to close loans pursuant to instructions provided by AIG FSB.", "Closing agents are not permitted to deviate from the closing instructions."

When I reminded Mr. Gindi that we were merely exercising our right by Law to reserve our rights upon entering the loan contract, he said: "What rights?, you don't have any rights."

AIG FSB states: "AIG FSB respects each party's right to enter into an agreement on terms that are acceptable to said party."

The fraud committed by Mr. Gindi was witnessed in silent acceptance by Mickey Lowitt, the attorney in attendance who served us the loan # A4070096 documents to be endorsed, and Larry Ganca/Sr. Loan Officer was also present at the de fact closing.

Is Mr. Gindi's total disregard of the People's Rights, Professional Responsibility and Law a reflection of the operating procedures and policies of BLS FUNDING?

You needn't be sorry about how you assume I feel Mrs Hornig because, the People know for sure that we were defrauded by Corey M. Gindi and that the Law will always prevail.

Your professional response to this Illegal/Unlawful matter will be respected.

JUS

"WITH EXPLICIT RESERVATION OF ALL RIGHTS, WAIVER OF NONE, VESTED AND RETAINED."

The People: _____

James S. Hawkins-El III,
Free National Citizen of The United States of America.

Cc: Mr. Brown/President-BLS FUNDING
    Corey M. Gindi/attorney at Law
    Mickey Lowitt/attorney at Law

1-2

James S. Hawkins-El III
159 Bch 97ᵗʰ ST
Rockaway Bch, NY 11693


Carl Lutz, Vice President Mortgage Services
Wilmington Finance, Division of AIG FSB
401 Plymouth Road, Suite 400
Plymouth Meeting, PA 19462


RE: Bad Faith-Loan No. A4070096                      12/19/04


Dear Mr. Lutz,

      I AM James S. Hawkins-El III. This letter is in response to your letter dated Dec. 10, 2004, which established very clearly that Mr. Corey Gindi is not "the Bank", that he is not an employee of AIG Federal Savings Bank("the Bank"), that he is an independent closing attorney required to close pursuant to instructions by AIG FSB and that "AIG FSB respects each party's right to enter into an agreement on terms that are acceptable to said party."

No instruction requirement, although lacking contemplation of that which is afforded and guaranteed by Law, has the power or authority to excuse or exempt an attorney from his oaths and obligation to uphold The Constitution of the State in which he practices. That which is Lawful remains Lawful, contemplated or not.

Mr. Corey Gindi's obligations and duties as an attorney supercede any and all directives, instruction requirements or policies etc.

The loan, no. A4070096, agreement entered into on July 2, 2004 was done so under false pretense, where Mr. Corey Gindi made False Statements, Misrepresentations and acted in Bad Faith.

I find the terms of Loan- no. A4070096 agreement Unacceptable, Illegal and Unlawful.

Your professional response to this Lawful/Legal matter will be respected.

JUS

2-2

"WITH EXPLICIT RESERVATION OF ALL RIGHTS,
WAIVER OF NONE, VESTED AND RETAINED."

The People:

James S. Hawkins-El III,
Free National Citizen of The United States of America.

Cc: Mr. Robert Pierce, President/CEO

1-2

James S. Hawkins-El III
159 Bch 97th St.
Rockaway Bch, NY 11693

Robert W. Pierce, President/CEO
AIG Federal Savings Bank
One Alico Plaza, 600 King St.
Wilmington, DE 19801-0000

8/20/04

RE:   BAD FAITH, FALSE STATEMENTS, FRAUD etc.
      Corey M. Gindi/attorney
      BLS FUNDING/Wilmington Finance/Division of AIG FSB
      125 Jericho Turnpike
      Jericho, NY 11753

Dear Mr. Pierce,

I AM James S. Hawkins-El III. I am writing to inquire into the validity of statements made by Corey M. Gindi at the closing of mortgage loan no. A4070096, 7/2/04, on behalf of Wilmington Finance/AIG Federal Savings Bank. Mr. Gindi stated that "The Bank" would not accept mortgage loan no. A4070096 if it was signed and all rights were reserved by the applicants, Valerie Gaston and myself. Mr. Gindi said that he was "The Bank" when questioned by me how he knew "The Bank" would deny loan application no. A4070096. Mr. Gindi said the signing would be his way or no way. Did Mr. Gindi speak for Wilmington Finance/AIG Federal Savings Bank when he made the aforementioned statements?

Is there a legislative statute, bill, code, rule or regulation etc. enforce and in affect in the state of New York or Delaware that Wilmington Finance/AIG Federal Savings Bank has to comply with as it relates to the restriction of the Reservation of Rights by a Citizen in the state of NY or DE upon signing a loan contract. Wilmington Finance/AIG Federal Savings Bank should be well aware of The Constitutional Protections of The People in this state as per: The U.S. Constitution Art. 1 Sec 10 Para. 1, and Article of Amendment 9. The Constitution of The state of New York Bill of Rights, Article 2. "Supreme Sovereignty in The People. No authority can, on any pretense whatsoever, be exercised over the Citizens in this state, but such as it is or shall be derived from and granted by the People in this state."

Your professional response to this Lawful/Legal matter will be respected.

2-2

JUS.

"WITH EXPLICIT RESERVATION OF ALL RIGHTS,
WAIVER OF NONE, VESTED AND RETAINED."

The People:

James S. Hawkins-El III,
Free National Citizen of The United States of America.

C: Corey M. Gindi/attorney
Wilmington Finance/Legal Dept.



**PREMIUM CAPITAL FUNDING**

Audra Hornig
125 Jericho Turnpike
Jericho, NY 11753

Audra Hornig
General Counsel
125 Jericho Turnpike
Jericho, NY 11753
Ph: 516-870-1124
Fx: 516-870-7124

August 3, 2004

James S. Hawkins-El III
159 Bch 97th Street
Rockaway Bch, NY 11693

I am in receipt of your letter sent to Mr. David Brown regarding Mr. Gindi impairing your rights to sign the documents in the way you would have liked. Our company was not present at the closing. We neither allowed nor hindered your ability to sign the documents in the way you would have liked.

In any event, if you did not want the loan because you could not sign the way you wanted, you had every right under the law at that time not to sign the documents and walk away from the loan.

I am sorry you feel your rights were infringed upon.

Sincerely,

Audra Hornig
General Counsel

**Audra Hornig**
125 Jericho Turnpike
Jericho, NY 11753

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS

*EXHIBIT B*

--------------------------------------------------------------X
JAMES S. HAWKINS-EI III and VALERIE GASTON            Index No.: 5680/05

                      Plaintiffs,

    – against –                                    **AFFIDAVIT**

COREY M. GINDI and MICKEY LOWITT

                  Defendants.
--------------------------------------------------------------X

STATE OF NEW YORK    )
                     ) ss
COUNTY OF NASSAU    )

      COREY M. GINDI being duly sworn deposes and states:

    1.      I am a member of Gindi & Barone, LLP, ("the Firm") located at 125 Jericho Turnpike, Suite 400, Jericho, New York.  Michael Lowitt s/h/a Mickey Lowitt is employed by the Firm.

    2.      The Firm served as closing agent to Wilmington Finance a division of AIG Federal Savings Bank (the "Bank") with reference to a mortgage loan to James Hawkins-EI, III and Valerie Gaston on July 2, 2004.  I and Mr. Lowitt attended the transaction on behalf of the Firm, as closing agent for the Bank.

    3.      The Firm, Mr. Lowitt, and I never entered into an attorney-client relationship with plaintiffs, James S. Hawkins-EI, III or Valerie Gaston.

    4.      One of the documents which James S. Hawkins-EI, III and Valerie Gaston signed

*EXHIBIT B*

during the closing expressly advised them that the Firm, Mr. Lowitt, and I did not represent them and that they had a right to retain their own attorney. They also signed a document which advises them that they had the right to cancel the loan within three days of the closing.

5. All the documents necessary for the closing were prepared by the Bank. The Firm received specific instructions from the Bank with respect to the closing transaction. The Firm, Mr. Lowitt and I, as agents for the Bank, had to follow these instructions as the directives from our client. Among these instructions, is a directive that the borrower must sign all documents "EXACTLY AS THEIR NAME IS TYPED ON THE DOCUMENT".

6. During the closing, the plaintiffs insisted on adding a statement to their signature. The statement is similar to the one used in the execution of the verification to the instant complaint.

7. The plaintiffs were told that pursuant to the Bank's instructions all documents had to be signed exactly as the borrower's name appeared on the document. The Firm, Mr. Lowitt, and I had to insist that the documents be executed as directed by our client or the closing could not proceed.

COREY M. GINDI

Sworn to before me this
___ day of April, 2005

Notary Public

DOMINGO R. GALLARDO
Notary Public, State of New York
No. 02GA5049051
Qualified in Suffolk County
Comm. Expires September 25 2005

 *Wilmington Finance*

December 10, 2004

James S. Hawkins-El III
159 Beach 97th St
Rockaway Beach, NY 11693

Re:  Loan No.:  A4070096

Dear Mr. Hawkins-El III:

This letter is in response to your letter addressed to Mr. Robert Pierce regarding the above named loan.  In your letter you inquire whether Mr. Corey Gindi was "the Bank" and whether Mr. Gindi spoke for the "Bank "when providing instructions at your loan closing.

Mr. Gindi is not an employee of AIG Federal Savings Bank ("AIG FSB") rather; he is an independent closing attorney.  As a closing agent, Mr. Gindi is required to close loans pursuant to instructions provided by AIG FSB.  The deviation in the signature line as defined in your letter is not contemplated in the closing instructions.  Closing Agents are not permitted to deviate from the closing instructions.

AIG FSB respects each party's right to enter into an agreement on terms that are acceptable to said party.  The terms entered into were agreeable to AIG FSB.  We infer from the fact that you closed your mortgage loan, that you were agreeable to the terms as well.

Respectfully,

Carl Lutz, Vice President Mortgage Services



# Wilmington Finance, a division of AIG Federal Savings Bank
## CLOSING INSTRUCTIONS

| | |
|---|---|
| **Loan Number:** | A4070096 |
| **Borrower (s) Name:** | VALERIE GASTON AND JAMES S. HAWKINS-EL III |
| **Property Address:** | 159 BEACH 97TH ST, FAR ROCKAWAY, NY 11693 |
| **Closing Agent:** | GINDI & BARONE, LLP |
| **Closing Date:** | JULY 02, 2004 |
| **Disbursement Date:** | JULY 09, 2004 |
| **Loan Amount:** | $ 280,000.00 |
| **Interest Rate:** | 6.990 |

MAR 2 9 20...

EXHIBIT A

RECEIVED

**ALL DOCUMENTS MUST BE IN OUR OFFICE WITHIN 24 HOURS OF CLOSING.**
Closing Agent to overnight package to:

**Wilmington Finance, a division of AIG Federal Savings Bank**
**401 PLYMOUTH ROAD, SUITE 410**
**PLYMOUTH MEETING , PA 19462**
**\*\*A copy of your Closing Protection Letter must be submitted with each package.**
**\*\*Wiring Instructions must be submitted with each package.**

MAR 2 1 2006

PRO SE OFFICE

You are authorized to close and disburse funds for the loan described above, provided settlement can be made in accordance with these Closing Instructions, all conditions and requirements thereof, and of any supplemental instructions or addenda attached hereto. Any loss incurred by                    **Wilmington Finance, a division of AIG Federal Savings Bank**
as a result of closing agent's failure to comply with these instructions shall be the responsibility of said agent.

DOCUMENTS MUST BE SIGNED AND NOTARIZED BY A CLOSING AGENT EMPLOYEE, ATTORNEY, OR WHERE PERMITTED BY LAW, A NOTARY PUBLIC, EACH OF WHICH WILL ACT ON BEHALF OF CLOSING AGENT FOR
**Wilmington Finance, a division of AIG Federal Savings Bank**
PURSUANT TO THESE CLOSING INSTRUCTIONS.

CLOSING AGENT IS HELD RESPONSIBLE FOR THE SIGNING, NOTARIZATION AND CLOSING PURSUANT TO THESE CLOSING INSTRUCTIONS, REGARDLESS OF WHETHER CLOSING AGENT OR A THIRD PARTY ACTING ON BEHALF OF CLOSING AGENT CLOSES THE LOAN TRANSACTION.

CLOSING AGENT IS RESPONSIBLE FOR COMPLETION OF THE CUSTOMER IDENTIFICATION DOCUMENT.

- ☐ Each borrower must sign all documents **EXACTLY AS THEIR NAME IS TYPED ON THE DOCUMENT.** Each borrower must sign all documents required by local, state, and federal law, and must execute the documents in blue ink.

- ☐ Any changes made to any document must be approved by  **Wilmington Finance, a division of AIG Federal Savings Bank**

  - ☐ Closing Agent to prepare the HUD-1 Settlement Statement using the fees listed on the Fee Schedule on page (3) of the instructions. **THIS ORIGINAL HUD-1 MUST BE SIGNED BY ALL BORROWERS AND RETURNED TO.**  **Wilmington Finance, a division of AIG Federal Savings Bank** . If _any changes are_ made to the fees disclosed on our Fee Schedule, the changes must be communicated to **Wilmington Finance, a division of AIG Federal Savings Bank**  prior to the borrowers signing and must be approved by a  **Wilmington Finance, a division of AIG Federal Savings Bank**  representative.

  - ☐ Closing Agent is responsible for disbursing funds on the date of disbursement in accordance with these closing instructions and applicable law. If disbursement of funds are not completed on this date, closing agent is responsible for notifying  **Wilmington Finance, a division of AIG Federal Savings Bank** and the customer. In the event the loan disburses after the scheduled disbursement date, closing agent is required to credit customer any interim interest due and modify the HUD 1 settlement statement to reflect the correct interim interest charged to the customer.

  - ☐ Any name variations not currently listed on the AKA Affidavit must be added and signed by the appropriate party and signed as it appears on the Affidavit. POWERS OF ATTORNEY ARE NOT ACCEPTABLE FOR THE BORROWERS and/or NON-ELIGIBLE BORROWERS.

- ☐ If this loan is a refinance and subject to a Right-of-Rescission, you must insure the Borrower(s) has not exercised this right before disbursing funds.

- ☐ Add Legal Exhibit to Mortgage prior to closing.

- ☐ Provide Borrower with First Payment Letter.

- ☐ Sign off on these closing instructions to insure all requirements have been satisfied.

- ☐ Taxes due within 60 days of disbursement must be paid prior to disbursement.

- ☐ Marked up Title Commitment or Title Policy must have an effective date within 45 days of Closing Date. Must insure **Wilmington Finance, a division of AIG Federal Savings Bank**        I.S.A.O.A in the amount of $ 280,000.00

- ☐ ALTA Title Policy must contain endorsements 116, 8.1, and 8.1

- ☐ On the day of disbursement and prior to any funds being released, verify that this security instrument is a valid  FIRST  lien on the subject property, subject only to:
  - Taxes not due within 60 days of disbursement,
  - All valid and enforceable utility easements and unviolated restrictions of record which do not materially adversely affect the value, enjoyment, or use of the subject property, and
  - Encumbrances shown in Schedule B of Commitment # except items
  - Verify all taxes and special assessments which presently constitute a valid lien of subject property have been paid in full.
  - No survey exceptions are permitted on purchase money transactions.

LENDER SUPPORT SYSTEMS INC, WIL-01.WIL (10/03)

☐ Do not disburse loan proceeds until all of the following outstanding conditions have been met:

    1) PRIOR TO: DOC - APPRAISER INSPECTING PROPERTY TO PROVIDE LICENSE AND E&O INSURANCE
    2) PRIOR TO: DOC - BRANCH TO PERFORM EMPLOYMENT AND RESIDENCE VERIFICATION
    3) PRIOR TO: DOC - HOMEOWNERS  LOSS PAYEE TO READ SAME AS LENDER ON DOCUMENTS
    4) PRIOR TO: DOC - BROKER FEE AGREEMENT
    5) PRIOR TO: DOC - SIGNED MLOA
    6) PRIOR TO: DOC - LEASE AGREEMENT FOR NON O/O UNIT IN SUBJECT
    7) PRIOR TO: DOC - PROOF CREDIT UNION DEDUCTIONS ON BOTH BORROWERS PAYSTUBS ARE NOT
    SEE "ADDENDUM TO CLOSING INSTRUCTIONS" ATTACHED HERETO AND MADE A PART HEREOF.

---

**THE FOLLOWING DOCUMENTS ARE ENCLOSED IN ORDER TO
PROPERLY EXECUTE THE ABOVE REFERENCED LOAN.**

**RETURN ALL *ORIGINAL* DOCUMENTS VIA OVERNIGHT MAIL WITHIN 24
HOURS OF LOAN CLOSING TO Wilmington Finance, a division of AIG Federal Savings Bank**

**DELIVER TO BORROWER ONE *COPY* OF EACH DOCUMENT SIGNED BY
THE BORROWER.**

**EACH BORROWER MUST RECEIVE TWO COPIES OF NOTICE OF RIGHT
TO CANCEL.**

---

Note, with any applicable rider(s).
Mortgage/Deed of Trust, with any applicable rider(s).
    - ORIGINAL - Appropriate governmental agency.
    - CERTIFIED COPY & RECORDED ORIGINAL
       - Wilmington Finance, a division of AIG Federal Savings Bank
       401 Plymouth Road, Suite 400
       Plymouth Meeting, PA  19462

ADD. TO CLOSING INSTR. - CONDITIONS
PREPAYMENT RIDER TO NOTE
1-4 FAMILY RIDER
ITEMIZATION-PAGE PAYOFFS
FEDERAL T.I.L. DISC STMT
SIGNATURE AFFIDVT AND AKA STMT
NOTICE OF RIGHT TO CANCEL
COMPLIANCE AGREEMENT
Form 4506-T REQ FOR TRANSCRIPT
W-9(s)
FEDERAL T.I.L. DISC STMT (Page
RESIDENCE AND WORK PHONE NO. CERT
LOAN PROCESSOR AGREEMENT
BORROWER'S CERT. & AUTHORIZATION
EQUAL CREDIT OPPORTUNITY ACT NOTICE
RESPA SERVICING DISCLOSURE
HAZARD INSURANCE AUTHORIZATION
ESCROW WAIVER
OWNER OCCUPANCY AGREEMENT
CHOICE OF INSURANCE NOTICE
ARBITRATION AGREEMENT

# FEE SCHEDULE

| Fees | Lender | Broker | Borrower Due | Seller Due | Borrower POC | Pay To |
|---|---|---|---|---|---|---|
| BROKER FEE | $ | $ 5,600.00 | $ 5,600.00 | $ | $ | BLS FUNDING CORP. |
| PROCESSING FEE | $ | $ 995.00 | $ 995.00 | $ | $ | BLS FUNDING CORP. |
| UNDERWRITING FEE | $ | $ | $ 185.00 | $ | $ | Wilmington Finance, a division |
| FLOOD CERTIFICATION FEE | $ | $ | $ 13.00 | $ | $ | Wilmington Finance, a division |
| ADMINISTRATION FEE | $ | $ | $ 495.00 | $ | $ | Wilmington Finance, a division |
| ATTORNEY'S FEE | $ | $ | $ 750.00 | $ | $ | GINDI & BARONE, LLP |
| MAILING/MESSENGER FEE | $ | $ | $ 50.00 | $ | $ | GINDI & BARONE, LLP |
| RECORDING FEE | $ | $ | $ 120.00 | $ | $ | GINDI & BARONE, LLP |
| TITLE INSURANCE FEE | $ | $ | $ 1,309.00 | $ | $ | GINDI & BARONE, LLP |
| TITLE EXAMINATION | $ | $ | $ 250.00 | $ | $ | GINDI & BARONE, LLP |
| SATISFACTION FEE | $ | $ | $ 125.00 | $ | $ | GINDI & BARONE, LLP |
| DEED PREPARATION | $ | $ | $ 100.00 | $ | $ | GINDI & BARONE, LLP |
| DEPARTMENTALS | $ | $ | $ 325.00 | $ | $ | GINDI & BARONE, LLP |
| BORROWER'S PORTION OF MTG | $ | $ | $ 4,875.00 | $ | $ | |
| ABSTRACT/TITLE SEARCH | $ | $ | $ 325.00 | $ | $ | GINDI & BARONE, LLP |
| ENDORSEMENT | $ | $ | $ 75.00 | $ | $ | GINDI & BARONE, LLP |
| LENDER'S PORTION OF MTG S | $ | $ | $ (700.00) | $ | $ | |
| SURVEY | $ | $ | $ 131.00 | $ | $ | |
| 7 DAYS @ $ 45.951 | 321.66 | $ | $ 321.66 | $ | $ | |
| | $ | $ | $ | $ | $ | |
| | $ | $ | $ | $ | $ | |
| | $ | $ | $ | $ | $ | |
| | $ | $ | $ | $ | $ | |
| | $ | $ | $ | $ | $ | |
| | $ | $ | $ | $ | $ | |
| | $ | $ | $ | $ | $ | |
| | $ | $ | $ | $ | $ | |
| **TOTALS:** | $ 321.66 | $ 6,595.00 | $ 15,344.66 | $ | $ | |

| These are FEES NOT paid by the Borrower | | | |
|---|---|---|---|
| | | % = $ | |
| | | % = $ | |
| | | % = $ | |
| | | % = $ | |

IMPOUNDS:

| | |
|---|---|
| | |

### Net Wire Amount $ 279,695.34

# PAYOFF SCHEDULE

| | |
|---|---|
| WASHINGTON MUTUAL HOME | $ 248,805.16 |
| CITIFINANCIAL | $ 6,196.00 |
| DIRECT MERCHANTS BANK | $ 2,450.00 |
| GECCCCPCRI | $ 2,765.00 |
| CBUSASEARS | $ 1,471.00 |
| TAXES | $ 490.34 |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |

If there are any questions or problems, please call     ORSEN SOWELL     , at
Wilmington Finance, a division of AIG Federal Savings Bank     , at (877)963-4966

## PLEASE SEE NEXT PAGE FOR THE CERTIFICATION AND ABA QUESTIONAIRE.

# CERTIFICATION

| | |
|---|---|
| Loan Number: | A4070096 |
| Borrower (s) Name: | VALERIE GASTON AND JAMES S. HAWKINS-EL III |
| Property Address: | 159 BEACH 97TH ST, FAR ROCKAWAY, NY  11693 |
| Closing Agent: | GINDI & BARONE, LLP |
| Closing Date: | JULY 02, 2004 |
| Disbursement Date: | JULY 08, 2004 |
| Loan Amount: | $  280,000.00 |
| Interest Rate: | 6.990 |

I HAVE PERFORMED THE CIP DUTIES OF LENDER UNDER SECTION 103.121 OF THE BANK SECRECY ACT.

I HEREBY CERTIFY THAT ALL REQUIREMENTS HAVE BEEN MET AND DISBURSEMENTS WILL BE MADE IN ACCORDANCE WITH THESE CLOSING INSTRUCTIONS.

_____                    7/02/04
(Closing Agent's Signature)                                           (Date)

Michael Cowitt
_____
(Closing Agent's Name - Print Legibly)


## **ADDITIONAL DISCLOSURE NOTICE AND CERTIFICATION: MANDATORY AFFILIATED BUSINESS ARRANGEMENT QUESTION TO BE ANSWERED BY THE TITLE/ESCROW AGENT**

CHECK ONE:

[X]  I/We the undersigned Title/Escrow agent **DO NOT** have any controlled/affiliated business arrangement with the broker(s) disclosed on the HUD-1 Settlement Statement in connection with this transaction.

[ ]  I/We the undersigned Title/Escrow agent **DO** have a controlled/affiliated business arrangement with the broker(s) disclosed on the HUD-1 settlement statement in connection with this loan transaction.  If the above statement is true, a properly signed ABA disclosure notice per RESPA must be provided with the closing package.  This loan shall not disburse until the proper ABA disclosure(s) are received by Wilmington Finance, a division of AIG Federal Savings Bank

_____                    7/2/04
(Closing Agent's Signature)                                           (Date)

Michael Cowitt
_____
(Closing Agent's Name - Print Legibly)